## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS

This Settlement Agreement and General Release of All Claims (the "Agreement") is entered into by and between (a) JESSICA FORD, individually, together with her heirs, agents, legal representatives, successors, and assigns (hereafter referred to as "Ford"), on the one hand, and (b) Fancy Hands, Inc., together with its predecessors, successors, affiliates, subsidiaries, parent companies, partners, investor, shareholders (including, but not limited to, Joshua Boltuch and Ted Roden), current and past employees, insurers, agents, legal representatives and any other person or entity with whom Ford allegedly may have been jointly employed (hereafter referred to as "Fancy Hands").

1. **Purpose:** The purpose of this Agreement is to conclusively resolve and settle **any and all** claims that Ford may have against Fancy Hands, including, but not limited to, any claims for relief that were made or could have been made by Ford in the matter of *Jessica Callier, individually and on behalf of all others similarly situated v. Fancy Hands, Inc.*, in the United Stated District Court, Southern District of New York, Case No. 15 CV 02232 (the "Lawsuit"). It is a further and equal purpose of this Agreement to resolve **any and all** disputes, controversies, or claims, that Ford may have against Fancy Hands, arising out of facts or circumstances occurring in whole or in part on or before the effective date of this Agreement, whether facts regarding any such claims are presently known or unknown, and regardless of whether same may be claimed to exist under current or future laws or interpretation of law. **This Settlement Agreement is one of five individual settlement agreements and it is expressly understood that this Settlement Agreement is contingent upon all five individual settlement being fully executed.**

2. **Opportunity to Negotiate, Consider and Consult with Counsel:** The terms of this Agreement are the product of negotiations between the parties hereto and their attorneys, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed. In executing this Agreement, Ford has not relied on any representation, compromise, conduct or action made by or on behalf of Fancy Hands or their attorneys not set forth in this Agreement. Ford acknowledges that she has obtained the advice of competent counsel and agrees that she has been given a reasonable period of time within which to consider this Agreement. Ford and Fancy Hands confirm that they had this Agreement explained to them by their attorneys, they are relying on their own judgment and on the advice of their respective attorneys, and each confirms their competence to understand and does hereby accept the terms and conditions of the Agreement.

3. **No Admission of Liability:** The parties stipulate and agree that neither the entry into this Agreement nor the payment of any consideration hereunder constitutes, for any purpose whatsoever, either directly or indirectly, an admission of any liability whatsoever, and that Fancy Hands expressly denies any and all such liability. This Agreement represents the compromise of disputed and contingent claims.

4. **Consideration:** The total consideration given by Fancy Hands to Ford under this Agreement consists of payment to Ford by Fancy Hands of Seven Hundred and Sixty-Seven Dollars and Seventy-Seven Cents ($767.77) to be distributed as follows:

   (a) Three Hundred Dollars and Zero Cents ($300.00), payable to Jessica Ford, representing alleged damages from her FLSA claim and for which a 1099 will be issued;

   (b) Two Hundred Dollars and Zero Cents ($200.00) payable to Jessica Ford in consideration for the general release, for which a 1099 will be issued; and

   (c) Two Hundred and Sixty-Seven Dollars and Seventy-Seven Cents ($267.77) payable to Pelton & Associates PC for which a 1099 will be issued to Ford and Pelton & Associates.

   The above-referenced payments shall be delivered to and held in the trust account of Fisher & Phillips within three (3) business days of receipt of the settlement agreements fully executed and non-revocable by Ford and all Opt In Plaintiffs who have joined the Lawsuit. The above-referenced payments shall then be delivered to Pelton & Associates PC within fourteen (14) calendar days after the last of the following dates (1) this Agreement is fully executed by all parties and the revocation period set forth below has expired; (2) the Lawsuit is dismissed with prejudice and ten (10) business days have passed or the Court has noted that the matter has been closed on the docket; and (3) W-9s are received by counsel for Fancy Hands from Jessica Ford and Pelton & Associates PC. The consideration given by Ford to Fancy Hands in support of this Agreement consists of full performance of each and every one of Ford's respective obligations described in this document, all of which are expressly made material.

5. **Release of Fancy Hands:** For and in consideration of the required acts and promises set forth in the text of this Agreement, Ford hereby knowingly and voluntarily releases and discharges Fancy Hands from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which Ford has or might have as a result of, or in any way connected with her alleged employment and/or independent contractor relationship with Fancy Hands, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Sarbanes-Oxley Act of 2002, the Equal Pay Act, 29 U.S.C. § 206(d), et seq.; the Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2001, et seq., the New York Human Rights Law, N.Y. Exec. Law § 290-301 et seq., the New York Equal Rights Law, N.Y. Civ. Rights Law § 40-C to 45, the New York State Employment Relations Act, N.Y. Lab. Law § 700, et seq., the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq., the New York minimum wage and overtime law and regulations, N.Y. Lab. Law, Article 19, §§ 651

et seq., the New York Wage Payment Act, N.Y. Lab. Law § 190, et seq., the New York Whistleblower Laws, N.Y. Lab. Law §§ 740, 741, and 215, the New York Warn Act, N.Y. Lab. Law §§ 860 et. seq., the Connecticut Human Rights and Opportunities Act, Conn. Gen. Stat. § 46a-51, et seq., the Connecticut Family and Medical Leave Act, Conn. Gen. Stat. §31-51kk, et seq., the Connecticut Occupational Safety and Health Act, Conn. Gen. Stat. §31-367, et seq., the Rhode Island Civil Rights Act; the Rhode Island Fair Employment Practices Act; all Connecticut and Rhode Island wage and hour laws and any and all other applicable state, county or local statutes, ordinances or regulations in the states of Connecticut and Rhode Island, and all other local, state or federal laws including but not limited to these relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliation, breach of contract, wage claims, including but not limited to claims for bonuses, severance, vacation and overtime, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which Ford has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the date of execution of this Agreement.

6. **Covenant Not to Sue:** Ford represents that, except for the Lawsuit (as herein defined), there are no pending lawsuits, charges or other claims of any nature whatsoever against Fancy Hands. Further, Ford agrees not to assert any new or additional claims, charges or other legal proceedings against the Fancy Hands based on any events, whether known or unknown, occurring prior to the date of the execution of this Agreement, including, but not limited to any events related to, arising out of, her relationship (whether as an independent contractor, employee or otherwise) with, compensation by and/or termination from the Fancy Hands. Ford further agrees that this release and covenant not to sue encompasses all obligations of the Fancy Hands. If Ford breaches this paragraph, Ford shall pay, as permitted by applicable law, all of the actual attorneys' fees and costs incurred in each action, suit or other proceeding, including any and all appeals or petitions therefrom by Fancy Hands (as herein defined). Ford further agrees that she will "opt out" of any class action and shall not "opt in" to any collective action in which the Fancy Hands is named as a defendant with respect to any claim that has been released pursuant to this Agreement. Ford also agrees that if any charge or complaint is filed on her behalf based on events occurring prior to the date of the execution of this Agreement, she will not accept any relief or recovery therefrom.

If Ford breaches either paragraph 5 or 6 hereof by, for example, knowingly filing and/or joining a lawsuit regarding claims she has released, Ford shall pay the Fancy Hands all reasonable attorneys' fees and costs incurred in each action, suit or other proceeding, including any and all appeals or petitions therefrom.

7. **Dismissal of Lawsuit With Prejudice:** Ford agrees to immediately file all necessary documents to dismiss the Lawsuit with prejudice, with the parties bearing their respective costs and expenses, including attorneys' fees. Ford agrees not to reargue, reinstitute or refile any of those claims or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type be filed that are connected in any fashion to the alleged employment and/or independent contractor relationship between Ford and Fancy Hands, or for any personal injuries sustained in the course of such relationship, or by virtue of or related to any other facts, acts, or events occurring in whole or in part on or before the date of execution of this Agreement.

8. **Withdrawal of Other Claims/Charges:** Ford specifically agrees: (A) that any claims she has or might have pertaining to Fancy Hands' employment practices arising under any municipal, state, or federal law are completely settled; and (B) that she will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against Fancy Hands with any municipal, state, or federal government agency or court. While Ford understands that the law permits, and that she is not foreclosed from filing an agency charge, should any such charge or action be filed by her or on her behalf involving matters covered by this Agreement, Ford agrees to promptly give the agency or court having jurisdiction a copy of this Agreement and inform them that any individual claims Ford might otherwise have had have been settled. Nothing in this Agreement is intended to prevent Ford from participating in a proceeding with any appropriate federal, state or local government agency to enforce discrimination laws, nor shall this Agreement prohibit Ford from cooperating with any such agency in its investigation, provided, however, that Ford expressly waives any claim to any form of monetary or other damages or legal relief in connection with any such proceeding.

9. **Confidentiality and Non-Disclosure:** (a) Ford and her attorney agree to keep the terms of this settlement in strict confidence. Ford and her attorney agree not to disclose the terms of the Agreement, the discussions relating to this Agreement, or that Ford received any payments or other relief from Fancy Hands in conjunction with this Agreement or the Action, to anyone, unless specifically required by law, or in response to an inquiry from any judicial, governmental, regulatory, or self-regulatory agency or organization. The parties specifically acknowledge that they may be required to disclose the terms of this agreement to the Court in the context of the Lawsuit and that such disclosure shall not be breach of this Confidentiality and Non-Disclosure provision. This provision shall not prohibit Ford from providing information regarding this matter to any governmental regulatory body in response to a lawful request for information, or prohibit Ford from disclosing such information to the extent required by law. If Ford is so required by law, then she or they shall notify, in writing, both Steven A. Siegel, Esquire, Fisher & Phillips, LLP, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301 and Josh Boltuch, Chief Executive Officer, Fancy Hands, Inc., 817 Broadway, 4th Floor, New York, New York 10003 of any such required disclosure as soon as practicable so as to allow the Company sufficient time to move to quash, if possible, any such request. The non-disclosure agreement set forth in this paragraph also shall not be deemed to be breached by either Ford's disclosure of this document and/or the terms of this Agreement to her spouse, accountant(s), attorney(s), financial planner(s), and tax advisor(s) as may be necessary in order for Plaintiff to receive financial, tax or legal advice. In the event of such disclosure, Ford shall: (a) inform each such individual(s) of the terms of this paragraph; and (b) obtain agreement from

SETTLEMENT AGREEMENT AND RELEASE

PAGE 4

Ford's Initials

such individual(s) that they will abide by the non-disclosure clauses of this Agreement. Ford also may disclose the terms of this Agreement to the IRS or other taxing authorities, or the like. Ford represents that, prior to the date of this Agreement, she has not disclosed the terms of this Agreement or settlement negotiations with anyone other than the parties to this Agreement and her attorney in this Action, spouse, and/or to her or her accountant(s) and/or tax advisor(s). Notwithstanding the foregoing, if asked about the Action, Ford may respond only that that the Action has been resolved. In no event may Ford or her attorney advise the media of this settlement, issue a press release, make any post on any type of social media or otherwise make public disclosure of this settlement to any third party or third person.

(b) Ford acknowledges and agrees that confidentiality is of the essence to this Agreement and that it is difficult to determine the amount of specific monetary damages which will be suffered upon any breach of any of the non-disclosure provisions of this Agreement. Ford represents that her attorney in the Action is aware of this fact and agrees to inform any future attorney of such fact. Therefore, Ford agrees that, in addition to any damages recoverable by Fancy Hands for breach of any of the confidentiality provisions of this Agreement as determined by a court of law, Fancy Hands will be entitled, upon any such breach or threatened breach, to an immediate injunction to prevent any such breach, future breach or threatened breach. In addition, in the event of a breach, Ford agrees to pay liquidated damages in the amount of Two Hundred and Fifty Dollars ($250.00) upon proof in a court of law of the breach of the confidentiality provisions of this Agreement by Ford or anyone acting on her behalf.

10. **Acknowledgment of Receipt of All Payment Owed:** Ford represents, acknowledges and agrees that upon payment of the sums identified in paragraph 4(a) through 4(c) that she will have received all salary, wages, overtime payments, liquidated damages and employee benefits to which she was and/or is entitled as a result of her alleged employment and/or independent contractor relationship with Fancy Hands, including payment for all time worked and all overtime owed or claimed to be owed under the Fair Labor Standard Act ("FLSA") and the New York Labor Law (NYLL), all Connecticut and Rhode Island and any other state wage payment laws, together with liquidated damages on said sums. In addition, Ford represents, acknowledges and agrees that the attorneys' fees set forth in paragraph 4(c) constitute all fees incurred and paid in connection with the wage and hour violations alleged in the Lawsuit.

11. **Attorneys' Fees:** In the event that any party files suit or brings any other legal proceedings against the other on any claim that is released hereunder, the prevailing party shall be entitled to recover all reasonable costs and attorneys' fees.

12. **No Changes to Agreement:** No modifications or amendments to any of the terms, conditions, or provisions of this Agreement may be made except by a written agreement executed by all parties hereto.

13. **Severability:** If any provision(s) of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining


Ford's Initials

provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

14. **Effect of Waiver:** The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

15. **Governing Law:** The laws of the State of New York shall govern the validity, construction, and enforcement of this Agreement.

16. **Ownership of Claims:** Ford represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

17. **Multiple Originals:** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Electronic or fax versions shall be deemed originals.

18. **Binding Effect:** This Agreement shall be binding upon the parties and, with respect to Ford, her spouse, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees, attorneys, successors and assigns.

19. **Tax Indemnification:** Ford acknowledges and agrees that she shall pay any local, state or federal income taxes, penalties, fines or assessments incurred as the result of any payment to her by Fancy Hands pursuant to this Agreement. Ford shall hold harmless and indemnify Fancy Hands from and against all tax liability incurred by Fancy Hands relating to or arising from any payment to her pursuant to this Agreement and shall reimburse Fancy Hands for all taxes, assessments, penalties, fines, liabilities, costs, and expenses, including reasonable attorneys' fees incurred by Fancy Hands, whether by reason of any claims made by the Internal Revenue Service, the New York state taxing authorities, or any other taxing authority, arising from or relating to payment to her pursuant to this Agreement. Ford also expressly acknowledges and agrees that Fancy Hands shall not be liable for any taxes owed by her regarding amounts paid pursuant to this Agreement, and further acknowledges that neither Fancy Hands nor its Counsel have made any representation to her regarding her tax liability, if any, for the payments pursuant to this Agreement.

20. **Entire Agreement:** This Agreement constitutes the entire, complete and integrated agreement between the parties with regard to the subject matter contained herein, including all settlement terms, and supersedes all previous oral or written agreements, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement. This Agreement may not be amended or modified except by a writing duly signed by the parties or their duly authorized representatives.

21. **Opportunity to Consider:** Ford is hereby advised and encouraged to consult with an attorney before signing this Agreement. Ford has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, Fisher & Phillips, LLP, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this Agreement, Ford agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against one party in favor of the other.

22. **Revocation Period:** All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days after the date that Ford signs this Agreement. During that seven (7) day period, Ford may revoke this Agreement. If Ford does not advise Steven A. Siegel, Esquire, Fisher & Phillips, LLP, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of an intent to revoke this Agreement, this Agreement will become effective and enforceable upon expiration of the seventh (7th) day following Ford's execution hereof.

DATE: 7/8/15, 2015          Signature: _____
                                        Jessica Ford

DATE: _____, 2015      Signature: _____
                                        Joshua Boltuch, on behalf of
                                        Fancy Hands, Inc.

STATE OF __RI__ )
)
COUNTY OF __Washington__ )

Before me, the undersigned NOTARY public, on this date personally appeared **Jessica Ford**, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this __8th__ day of __July__, 2015.

_____
Notary Public in and for
the State of __Rhode Island__

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

__RIDL_____
Type of Identification Produced


My Commission Expires:

MICHAEL ROSSI
Notary Public, State of Rhode Island
My Commission Expires June 12, 2018

---

SETTLEMENT AGREEMENT AND RELEASE
PAGE 8